Good morning, your honors. May it please the court, I'm Randolph Armstron, attorney for Ethan Enterprises, Gregory Tift, and Rebecca Johnson, the appellant's defendants in this matter. Mr. Tift is with me this morning. And Ethan Enterprises is a, I would like to reserve five minutes, please, for rebuttal. Ethan Enterprises is a flooring contractor and Mr. Tift and Rebecca Johnson have been officers of Ethan at various times. However, Rebecca Johnson has been minimally involved. She has been on pregnancy leave since about the end of 2002. The defendants are facing a default judgment in excess of a million dollars, which is obviously a tremendous effect on their life. And the fact that it's based on a default judgment, which they never saw, and which has speculative data, is supporting it at best. Can I just give you an impression, for the sake of getting your response to it? I mean, it seems to me that this thing basically, on one take, boils down to, as to the corporation, it can't be represented as an action absent counsel. That's the end of it for the corporation. As to the individuals, the individuals in this case had appeared and had participated in the litigation. The answer had been filed. So there was personal jurisdiction that wasn't contested. I know it was raised as an affirmative defense, but it wasn't contested. So you've got to assume personal jurisdiction over the individuals. And that being the case, the additional service or service after that is measured by Rule 5. And that's the And that allows for service at the last known address unless there's a new claim. Here, the claim that was made had to do simply with a new form of a new, newly signed collective bargaining agreement, which couldn't come as any kind of surprise to anybody. Last known addresses were not supplied. And in effect, Mr. Tiff disappeared, or at least he abandoned his declaration. I infer his position was, look, I'm going to pay attention to the NLRB matter, because I think that's going to control what happens in the Federal litigation. And he just let this one go for whatever the reason. So why doesn't that kind of just end it? Because that's all correct. The district court would not have abused its discretion in failing to lift the default judgment. The lower court did they said just the fact that they didn't give their address or didn't get other counsel was enough for default judgment based on the amended complaint. And the amended complaint, which had to be served by process, had to be process served. That's the question. Why? Excuse me. Why? If you take my my, you know, the statement I just made to you is a coherent well, it may have been incoherent, but it is a coherent view of how this thing could have gone down. And what I'm asking you is, what's wrong about that view? The — I think the facts that one, we said the improper service, and I'll get back to the — and the other is an excusable neglect and misrepresentation. But back to your fact situation, which I think is important. In March of 2004, Ethan Enterprise moved to save money from their location three miles away to another business park. They — That all is irrelevant if they're not represented. Excuse me? At that time, they were represented, Your Honor. They — Well, then counsel may have goofed by not providing a correct address. Yes. Well, he was still representing at that time, and he withdrew on March 29th of that month. And he did give his — give the defendants a copy of the stipulation, but it wasn't signed by the court yet. And it did have the provision in that he had to get other counsel. And he never did get — or any of the defendants never got a copy of the signed order. After — after that, he didn't — he signed a postal new address, forwarding address for the corporation, but he didn't change for the individuals. And that's — that's — that's true. And he never — he never received — of course, he had affidavits of the others — never received notice of anything else after that. And — And did the court ever make any factual finding about whether he believed that? I mean, essentially, what you have is a situation where everything — the court sent many things, apparently, and the plaintiff sent many things, and the defendants say they got none of it. Is that right? That's correct. They did not know anything served after April. They claim that what the court sent, they didn't get, even though they — they're also saying that what the court sent them, they didn't get. I'm sorry. Excuse me? They're claiming that the court sent them things to their last address that should have been forwarded, but they never got. That's correct. It was the — it's my understanding that the court did forward it to the two individual defendants, and it was returned. And apparently, they didn't send it to the corporation after April. And the individuals did get — it was the wrong address. It got returned. The defendants never received that. It was the same address, wasn't it? Excuse me? The same address. The address of the corporation and the individuals that — Correct. That's correct. Yes. Same address. So it wouldn't have made — if the — if the mail to the individuals from the court was being returned, it wouldn't have made any difference whether the notice was sent to the corporation at that address, because it wasn't there either. Well, but there was a post — he had fired — I mean, had filed a postal forwarding, and he did get his address that came to Ethan Enterprises to that address, was forwarded to his new address. And he did receive those things. But he never received anything — anything else about — for the corporation relating to the court. So the postal change of address order is only good for the corporation, not for anybody else who — to whom mail was addressed at that location? Yes. And — Well, that was a mistake, then, right? I mean, it was — but what that ends up with is that the court was sending it to the only person whose address it had, and that there was no forwarding. That's correct. Yes. What's your response to Judge Reimer's question about why shouldn't we just view these facts as the fact that your client walked away from this litigation and put all of his hope in prevailing before the NLRB, which he thought would be dispositive of the claim that underlies the trusts, stood against him pending in district court? Yes. I — I don't think he intentionally walked away. I don't think he — he didn't think there was any activity in the case because he didn't receive any notice about it. Well, he'd received notice that he needed to find another lawyer to represent the corporation, and there's — apparently he didn't do anything about that. Yes. And he — he didn't do that, I guess, until he got — got any notice of any other activity in the case. And — but — but even if, Your Honor, follow the — the — your logic, if he — that rule, they didn't follow it or they didn't know about it, and if you can say that because of that rule, then you can just serve a new amended complaint, add things onto it, increase the amount of the complaint, and not give them notice, I think that's too severe of a sanction for not — What did the — the — as I read the amended complaint, what it did was to reference the fact that there was now a collective bargaining agreement, and I guess there was an additional component of the damage is based on that collective bargaining agreement. Correct. Yes, Your Honor. The suit has always been over whether or not the trust is owed funds that were never remitted for the benefits of — of the employees, right? That's right. And this was additional — additional contributions. Well, what wasn't really — I couldn't quite understand that. I thought this might have been what was going on, and maybe you can explain it to me. The — what was added was a reference — it's not even really there. They said they were adding it, but let's assume what was added was that this agreement that was signed in June of what, 2003? Yes. That was the settlement agreement. Which was a settlement of an earlier dispute about whether or not benefits were going to be — whether or not there was a collective bargaining agreement. Yes. So was this just additional evidence of the earlier collective bargaining agreement? Now, is this really a different agreement, or is it simply sort of saying, well, that dispute — we were claiming under a disputed collective bargaining agreement, but now they've settled it and agreed that there is going to — that there is — was a collective bargaining agreement, in essence. In other words, it — or put another way, aren't they in a way claiming less for that time period, because they're claiming the 50 percent rate now instead of the 100 percent rate for the pre-2003 period? And then they're going forward from June 2003 saying, well, now we know there's a collective bargaining agreement because the settlement says so. In other words, is this just another iteration of what was there earlier, influenced by the settlement agreement? I think it — it involved more. It increased the liability for my clients, and they should have known about it. And why did it increase liability? And they have made the argument that there was a collective bargaining agreement stronger, but isn't the same collective — aren't we talking about a collective in time periods, simply that now the dispute was — was somewhat liquidated, so to speak, by the settlement agreement? It's my understanding that it added additional trust funds that got contributions or additional contributions. Is that right? I'm not — that's my understanding, and I — and I wouldn't tell you. I couldn't tell. All I can tell is that there seemed to be — Isn't the increased liability, though, of your clients based upon the — the passage of time? Yeah. In other words, they're continuing in the floor business. They've got this running dispute with the union over whether or not they even owe any of these trust fund payments. But that's a function of time. I agree, but also, I understand that there are — What does that have to do with the amendment to — to the complaint? I — in my — the amendment brought additional funds that were — were entitled to contribution. But the additional funds include a temporal component, which is the damages are continuing to accrue if the union trust fund is correct. Yeah. And then — And the monies — that the monies are due and owing from the beginning to whenever the end point is going to be. Yes. And — and then also different — adding additional funds so there would be more contributors. Well, I'm looking at the — at the named trust funds. In fact, there is one less named trust fund on the amendment complaint, and there is in the original complaint. There are less — On — on — on the — the title of the complaint. The original complaint has six trust funds, and the — the first amendment complaint has five. And all of those five were in earlier. So that doesn't seem to be right. It just — as — and it's my understanding that there were additional funds added, and it would be increased the liability. But it's not true. I'm just showing it's not so. So what is the difference? Based on the — maybe other counsel can ask this. By his own affidavit, he said he was going to, as I understood it, add additional funds and — and when he went to amend the complaint. But I think that my — my client should have — should have notice of this before he — before judgment is entered. And when they — Let's separate the individuals from the corporation. Yes. Anything left of the corporation? I mean, as a practical matter, it's no longer in business, right? It — it's at very minimal. Is it defunct? I mean, is it even — does it even still pay its annual dues to the state? I believe it does. Okay. But there are no assets to it, right? No, correct. Very limited. Very limited. So the real fight here — the real fight here is vis-a-vis the individual. Excuse me? The real fight here is — is the liability of the individual. Yes, that's — that's correct. Okay. And that's very severe. All right. And that's really what we ought to focus on. Yes. Because you don't have a very good defense to the fact that the corporation didn't abide by its obligation to get replacement counsel. Well, that's right. And certainly, we have a defense on the amount. I mean, the difference between five times the man-hour is a dispute. Right. But that's set for the corporation, which — And which the individuals could be or possibly liable to. What, if it pierces the bail? No, as under the Labor Management Act, or the ERISA. Oh, I see. Okay. So it's treated like unpaid taxes if you're the employer who fails to withhold. Yes. Let's see. Could I reserve, then, my remaining time? Of course. Thank you. Mr. Borer? Good morning. My name is Robert Borer with the Seattle law firm of Ekman, Borer & Tulene, representing the several trust funds. Mr. Borer, if the scenario that I laid out in talking with Mr. Armstrong is not correct, that means that we then have to look to the efficacy of service by publication. And on that issue, my question is, the union simply recited the statutory requirement for service by publication, which doesn't suffice, as I read Washington law, and didn't follow up on knowledge that it had or should have had easily available to it, to find TIF and TIF's present whereabouts. So you may disagree with that, I assume. You might tell me why. We could not locate the defendants. Well, it certainly seemed easy enough to locate them. I mean, even the processer was told just a couple of miles away, you're engaged in ongoing litigation with these folks. It's something that just doesn't make a ton of sense to me. My understanding from the affidavits of attempted service were that the individual who received the documents disclaimed that he was Mr. TIF at the address that we thought was a new address. Which documents are you talking about, the original complaint or the amended complaint? The amended complaint. The original, the initial complaint was served without problem. It was the amended complaint that has the problem of service. So we attempted to find a new address for these people, could not locate them. The court documents, the court regular correspondence to these parties from the court clerk was returned, undeliverable. The Secretary of State's office did not have a new address for the registered agent. We had no other way to effectuate service. How did the union official who allegedly appeared at Mr. TIF's doorstep to gloat about the default judgment? I don't know, I don't represent the union or the union official. I represent a trustee who are, trustees who are union individuals, but I don't know anything about that meeting. I do know that unions regularly visit job sites. I don't know if it was a job site visit. I don't know anything about that. The labor agreement, I do want to address one particular issue, and that is to do with misrepresentation. We strenuously object to any characterization that these parties or this attorney engaged in misrepresentation of this Court. The amended complaint is based upon a new signed document that's in excerpts record tab 5 that the Court was addressing earlier. And it does several things. First of all, it clarifies the legitimacy of the prior labor agreement. So in other words, my scenario was correct.  It was still the same period and the same dispute. Exactly. Exactly. And it tacked on an additional period. And the reason we amended the complaint was because we wanted to incorporate the full term of the labor agreement so that there were no missing periods. There was no new claims. It was all four unpaid contributions. It was all four of these covered employees. The document was the same. And it all dealt with the same disputed period originally and in the future. Yes. Yes. And I would also point out that this document also references Tifton Young. The Tifton Young was Mr. Tiff's prior company. It was predecessor to Ethan Enterprises. And it is specifically referenced in that settlement document, that new labor agreement or compliance document in Excerpt No. 5. And it specifically incorporates And there were no funds, new funds added, and you never represented that there were. Right. Correct. So the issue before the court is was there an abuse of discretion? And we submit that there was not. The trial court below, faced with basically a non-cooperating set of defendants, had no other alternative but to respond to our request that we proceed with the best evidence available. I reference the Tifton Young matter because we used the last employer remittance report form submitted by Tifton Young. That was the only payroll information we had to formulate a claim for damages. These parties absolutely refused to participate. Let me ask you something. Does the default judgment get the funds at the 50 percent rate for the period covered by the agreement rather than the 100 percent rate? In other words, what the — It does both. It does both. We computed the basic claim for unpaid contributions based upon the payroll that we had from the Tifton Young payroll. Then there were additional amounts owing as per the second agreement. That was also — For the future. But for the past, you cut it in half because that's what the agreement says. Yes. So for that period, the claim actually, the new amended claim was actually for less than the original complaint. So it's now for 50 percent instead of 100 percent. Roughly, yes. And also you dropped the union dues part, too. So that's less. Yes. Well, the first part of the suit involved, you know, we filed a complaint. There was immediately a third-party complaint against the union. A lot of litigation ended up to be dismissed. So I took the — made the decision that rather than introducing that whole issue again, I would simply decline to represent the union with respect to dues. And that's why there is one less. So the union is out, the dues out. There's one — and for some period of time, this complaint is for less, and then for the future it's for more. It's for the same amount as what it was originally. Correct. The lower court, the three opinions were well-grounded in the law. The local rules are clearly enforceable law as per this circuit. The court answered every one of the points raised by the employers, the debtors, in their objections. And the judge clearly had a grasp of the record and what was happening in the case. That is not an abuse of discretion. And that is clearly the standard that we are looking to evaluate today. I do want to address the default judgment, and if there are any further questions about that, because it is a highly unusual methodology that we adopted. We would prefer, obviously, to have the payroll records of a contributing employer. These parties will become entirely uncooperative. At no point have we had access to their payroll records. In fact, at every point of the post-judgment proceedings, they had an opportunity to come forward to clarify, and they never did. One thing that Mr. Tift attached to one of his affidavits was a payroll in gross that had to do with gross payroll figures, no names, no Social Security numbers, no hours per month, no basis to determine whether there was an error in the way we calculated our judgment. The three orders which are at issue are kind of a serial review of post-judgment relief. The motion to set aside was based upon Civil Rule 60B-4 and argued the lack of personal service. That was dealt with by the court by saying personal service wasn't the main thing. We were dealing with parties who would not participate and, therefore, as a sanction we're entering judgment. And that's, as we have shown in our brief, a legitimate sanction as per the circuit's rule. And, as an additional matter, that publication was legitimately pursued. The second order was the motion for reconsideration. The court correctly said the motions are not favorably considered, motions for reconsideration. In fact, they should be denied unless there are new facts or a new law that was not available in the prior motion. Obviously, that did not apply. And if you look at their motion, they basically re-argued the same arguments over and over again. The third order has to do with a new set of arguments under Rules 60B-1 and 3. They add the claims of excusable neglect, mistake, and misrepresentation. The court rejected that also after analyzing, saying that they simply are regurgitating their same arguments without any new facts or argument. The case of Ringgold v. Worrell from this circuit is, I think, directly helpful in this. It had to do with an attorney who withdrew. Personal litigants who did not participate in attending pretrial conferences, they simply disappeared from the participation of the case. An $800,000 judgment was directed without notice and was upheld by the circuit for the reason that this was sanctioned for noncompliance with the local rule, that the parties were deemed to have the knowledge of their attorney, and that the court also affirmed the last known address rule. Unless there are further questions, I will reserve for this item. Okay. Thank you, Mr. Armstrong. The case mentioned, Riggolf, is very different from this case. And that case went on for quite some time. There were pretrial conferences. There were about four different attorneys. And there was a lot of opportunity to appear. And, in fact, the default judgment was based on the original complaint as well. So it's very distinguishable from this case. On the the ---- Your client objected to the calculation of the damages. But did it ever come forward with an alternative, with the actual figures? Excuse me? Did it ever come forward with the actual figures in the 6GB motion or otherwise as to what ---- In our motion, we have, yes. Ethan Enterprises has itemized the hours, the man hours, and shown that they're the hours that proposed by the union trust are five times greater than what Ethan says they are. And that's my concern. Well, of course, if the lawsuit had gone on, there would have been discovery and there would have been some ascertainable way to tell that. Absolutely. Absolutely. Right? But there wasn't. Right. There was ---- So did he come forward with what would have been the discovery, i.e., who was paid what exactly during any time period? He ---- it's correct the other counsel said there had been written demands and they had been arguing about that, and there was a ---- So the answer is no. I mean, he never came forward with what the union could have obtained for information to calculate the damages from. Yes, but I'm not saying he wouldn't have at some point at the case going on. And ---- But he didn't do that within support of the 6GB motion. Is that right? He did not produce that kind of detail. No. No. What he said was this is five times higher than it should be. In this matter, in the ---- that's right. Correct. So from that, the only thing the district court would have been able to conclude is that he thinks it should be closer to $200,000 rather than a million. Correct. Correct. Yes. And also, counsel made a point linking Tifton Young, and they use the Tifton Young man hours, which is a company that is different from Ethan Enterprises, and even in ---- and it was from three years earlier also. And in the settlement agreement, there is a provision that says that there is no linkage between Tifton Young and Ethan Enterprises. And that's in the same, very same settlement agreement that the other party referred to. Wait a minute. It doesn't say that. You keep doing this, saying things that are not there. It says nothing in this agreement shall be used as evidence of any relationship between Ethan and Tifton Young. That's all it says. Okay. That's all right. It's ---- It doesn't say there isn't one. Oh, okay. You're correct. So, again, I go back to the ---- the amended complaint. My clients had a right to serve. Admittedly, having a default judgment for a million dollars is too much of a sanction for just failing to give the address unintentionally. And that there was ---- there was ---- it didn't come anywhere near meeting the Washington requirements for service of process. Look at the point of view of the court. What you have ---- the point of view of the court, what you have is a corporation in which the counsel withdrew, never appointed another lawyer. The court is sending documents to the address it has for the individuals. They're coming back undeliverable. How is the court supposed to proceed at that point? The case has gone away. And the client has no ---- your client has no reason to think the case has gone away. Yes, Your Honor, but here they're amending the complaint and they're putting blinders on. The process service goes there and said, well, they just moved over to Canyon Business Park three miles away. You haven't answered our question about why there had to be any service at all. I mean, any personal service as opposed to Rule 5 service. It was an amended complaint with summons and ---- Do you have any law that says that when you have an amended complaint, you have to have a summons and serve it? Well, the order allowing the amendment said it could process served on the defendant defendant's. So that is the ---- it's just like the union was out. I mean, as I mentioned, Mr. Ball was ---- he knew where the address was two months before.  It was on the trust fund. He signed it. He had participated in the default judgment, signing the at-man hours. And they didn't check the registered agent, the corporation to be served. They've got to go on the registered agent. There's no evidence they did. Are you saying the union official was, in fact, Mr. Borer's client? Excuse me? The union official that we were talking about earlier was Mr. Borer's client or an agent of Mr. Borer's client? I'm sorry. Excuse me? Are you saying that the union official who was gloating over the judgment was, in fact, Mr. Borer's client or at least an agent of the client? No. I don't ---- I'm just saying he was a union official, a union member, and was not Mr. Borer's client. I'm not ---- I think he was a union member and Mr. ---- If that's the case, how can we charge the trust with the knowledge of a person who's not an agent of the trust? Because he's a union manager, but he's also a trustee as part of the fund. He sits on the board of the fund. That is, Mr. ---- Sir. Yes. Once again, something you said is not so. And it's really getting a little much. Sorry. I just want to look at the order. Time is now expired, so let's try to wrap this up if we can. Okay. I'd like to respond to ---- Order allowing amended complaint. It says you said it provides that it has to be served by summons. What it says is order that service of the amended complaint shall be allowed. That's all it says. It says nothing about summons or matter of service. I'm sorry. I thought it would say that. Okay. Thank you. Thank you, counsel. The matter just argued will be submitted, and the court will stand in recess for the day. All rise. This court is in recess until 10 p.m.
judges: Rymer, Berzon, Tallman